UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WILLIAM FOSTER,                         :

                                   :

        Plaintiff,                :             __Civ. No. 24-cv-0251__

                                   :

          v.                    :

                                   :             __COMPLAINT__

UNITED NATURAL FOOD, INC.       :

                                   :             __JURY TRIAL DEMAND__

                                   :

        Defendant.            :

----------------------------------------------------------------X

## NATURE OF THE ACTION

This is an action under federal and New York State law to correct unlawful employment practices on the basis of age and retaliation.  As charged with greater particularity below, defendant's overnight supervisor continuously harassed plaintiff William Foster on the basis of his age, and plaintiff repeatedly brought his complaints to defendant's local Human Resources officers.  The supervisor still persisted with physically threatening behavior and age-based harassment.  Both the supervisor and the Human Resources office retaliated against Mr. Foster for having repeatedly complained about the harassment.

Ultimately, defendant UNFI terminated Mr. Foster's employment in retaliation for his having complained repeatedly about the pattern of age discrimination and retaliation.

## JURY DEMAND

1.      Plaintiff William Foster ("Mr. Foster"), demands a trial by jury of all issues in this action.

## JURISDICTION, PARTIES AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967, ("the ADEA"), 29 U.SC. §621 *et. seq*. and its prohibition on retaliation, 29 U.SC. §216 *et seq*.

3.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4.     Plaintiff William Foster resides in Orange County.

5.     Mr. Foster's date of birth is March 11, 1963.

6.     Mr. Foster was employed by defendant United Natural Food Inc. ("UNFI") from approximately July 11, 2022, until May 4, 2023.  During this period, UNFI employed Mr. Foster as a forklift operator at its warehouse located in Orange County, New York.

7.     At the time that he started his employment, Mr. Foster was fifty-nine years old.

8.     At all relevant times, defendant UNFI has continuously been doing business in the State of New York and has continuously had at least 15 employees.

9.     At all relevant times, defendant UNFI has continuously been an employer engaged in an industry affecting commerce.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this case arises under the laws of the United States, the ADEA and the latter's prohibition on anti-retaliation for those who engage in protected activity and complain of unlawful age discrimination.

11.     Venue is appropriate here, because the events about which plaintiff complains occurred in the town of Montgomery, New York, which is in Orange County, New York, and

which is an appropriate location for actions brought in this federal court.  All administrative

prerequisites have been met as plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission. He subsequently received a Right to Sue Letter from

EEOC.

12.     More than thirty days prior to the institution of this lawsuit, Mr. Foster filed the

first two charges with the Commission alleging violations of the ADEA.  All conditions

precedent to the institution of this lawsuit have been fulfilled.

13.     In addition, plaintiff brings additional claims under New York State Executive

Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant tolerated age

discrimination and a hostile environment on the basis of age. Mr. Foster also complains of a

course of unlawful retaliatory conduct that followed his repeated complaints about the

harassment.

14.     As such, plaintiff requests that the court take supplemental jurisdiction over the

New York State law claim, pursuant to 28 U.S.C. §1367(a). The facts are so closely related in the

same "nucleus of operative fact" with the federal ADEA claims against defendant UNFI such

that judicial economy favors discovery and trial in one judicial proceeding.

## FACTUAL ALLEGATIONS

15.     On approximately July 11, 2022, plaintiff Mr. Foster began employment with

UNFI at its Montgomery, New York facility driering and operating a hi-lo forklift.

16.     At that time, Mr. Foster was fifty-nine years old.

17.     When Mr. Foster began his employment at the "associate" level as a forklift

operator, he worked only on an overnight shift – typically lasting from 11 p.m. until 8 or 9 a.m.

18.     At the UNFI facility, employees move heavy quantities of food packed in large crates, both manually and by using the hi-lo forklifts.  They are loaded onto trucks in order to send large quantities of food to retail supermarkets.

### Wilson's Creation of a Hostile Environment for Older Employees and Others

19.     The UNFI workplace is overwhelmingly staffed by younger employees, many in their 20s and 30s. The physical work can be very demanding, depending on the particular job order being filled.

20.     From the start of Mr. Foster's employment, Greg Wilson ("Wilson") was Mr. Foster's immediate supervisor during the overnight shift.  Another supervisor, Hugo Saguilan ("Saguilan"), managed the overnight shift.

21.     Saguilan appeared to have more responsibility during that shift, and Wilson reported to Saguilan.

22.     From the start of Mr. Foster's employment, Wilson engaged in a pattern of making offensive statements and the use of epithets against different groups, including women, African Americans, and older employees.

23.     Several times per week, Wilson made sexual comments about female employees, such as stating a woman having a "great ass," or wanting "to tap that."  Or he often would make mention about a woman's breasts.

24.     Wilson also often used racist language.  He routinely used the "N-word" almost everyday in a joking way when speaking with employees.  Many employees were offended, including plaintiff.

25.     Almost every night and during the entire overnight work shift, Wilson also was responsible for playing racist, violent, and misogynist music on the public address system.

Wilson blasted this hate music incessantly over the warehouse's public loudspeaker, for all to hear.

26.     Wilson directed this playing of offensive hate music for a few months.

27.     Sometime during the fall of 2022, Mr. Foster complained about the disgusting racist (the "N" word screamed repeatedly) and misogynistic (referring to beatings and slapping) music – and blaring of loud chanting of racial hate speech.

28.     Mr. Foster complained about it to Ann Ferringerhahn ("Ferringerhahn") from Human Resources when he could stand it no more.

29.     Other workers were also greatly offended.

30.     At first, Human Resources simply did not believe Mr. Foster and told him so.

31.     The next evening, the hate music had stopped; instead, country music now played over the loudspeaker.  That evening, Wilson told Mr. Foster that there "will be no chit chat" between me and you.  It was "only going to be business" from now on.

32.     Shortly after the start of Mr. Foster's employment, Wilson engaged in a pattern of discriminatory and harassing statements against him because of his age.

33.     These comments soon escalated to the point that they were harassing, unwelcome and extremely upsetting.  They became more vicious and more frequent after Wilson's complaint about the racist music.

34.     Over the next approximate eight months, Wilson continually created a hostile environment against Mr. Foster on the basis of his age, along with harassing other UNFI associates.

35.     When Mr. Foster first started his employment in July 2022, Wilson made a few sporadic comments about Mr. Foster having a lot of gray hair and calling him an "old man" or a

"stupid old man" when he greeted Mr. Foster.  Wilson used some of those terms about another

older associate, Bruce Bennett ("Bennett")).

36.     Within several weeks, the age harassment became far more frequent and

threatening.  Wilson began a long course of conduct of regularly harassing Mr. Foster with bursts

of intense and loud profanity while making incessant comments about his age.  These included

the following:

        a.     Wilson routinely called Mr. Foster an "old fuck" or an "old piece of shit"

or an "old fucking man" or a "stupid old man" or an "old asshole." Sometimes he would instruct:

"go to work, you old fuck."

        b.     Wilson once told Mr. Foster that he was too old to even get the forklift

job, and that Mr. Foster should be fired;

        c.     Wilson would often tell Foster that he was "too old to get the job done

correctly."

37.     Mr. Foster and Bennett once spoke with Wilson about a problem they were

experiencing with the pallets they were using with the forklifts.  Mr. Foster later heard Wilson

ridicule him and Bennett as the "grumpy old men" while a group of supervisors (supervisors

named Elvis, Arthur, and others) laughed about them.

38.     On several occasions Mr. Foster told Wilson that his arm was sore or hurt because

he had had to carry or move boxes that fell while he was working on the forklift.  Wilson told

Mr. Foster that that was happening because "you are old."

39.     Most importantly, Wilson used this bullying and derogatory language about Mr.

Foster's age or being old *on approximately 50 occasions* –over a period of at least 6 months

between August 2022 and approximately the start of February 2023.

40.     Wilson similarly another older employee, Bennett, referring to him as an "old fucking man" and commenting about his white beard. This occurred approximately on a half dozen occasions.

41.     Wilson routinely made these discriminatory statements about older associates in front of other associates.

42.     Wilson's constant insulting toward Mr. Foster about his age was bullying, very upsetting, and created a discriminatory and hostile environment on the basis of Mr. Foster's age.

43.     In addition, during that fall of 2022, a co-worker and friend of Wilson's named Danny, *on a daily basis,* called Mr. Foster an "old piece of shit" and a "stupid old man."

44.     On at least 3-4 occasions in the late summer or fall, 2022, Danny had told Mr. Foster that he would "kick" his "ass" (once threatening to bring his boxing gloves) while calling Mr. Foster an "old piece of shit, N."

45.     For Mr. Foster, the constant stream of harassing statements about his age was intolerable and seriously affected his health.  Mr. Foster became extremely anxious, had serious difficulty sleeping, became depressed, lost his appetite, became socially isolated, and felt dread and was fearful at work.

**Mr. Foster's Complaints of Harassment and UNFI's Retaliation**

46.     In the late fall of 2022 and shortly after Wilson stopped playing the racist music and explained that there would not be "chit chat" between them, Mr. Foster complained about Wilson's age-based harassment to Ferringerhahn of Human Resources.  Mr. Foster informed her of the discriminatory and harassing statements and language and their frequency.  She took notes.

47.     Human Resources took no action to stop Wilson's conduct.  Rather, Wilson continued to make age-based insults after Mr. Foster's complaints.

48.     Mr. Foster complained verbally about Wilson and his harassment about Mr. Foster's age to Ferringerhahn on at least several occasions.  Mr. Foster told her how Wilson had call him an "old piece of shit" and a "stupid old man."

49.     Ferringerhahn would continue to take notes, often only telling Mr. Foster that she would "look into it."

50.     Wilson had also once made a sexually offensive comment to Mr. Foster about Mr. Foster "bending" his girlfriend over and having sex with her.  Mr. Foster also complained to Ferringerhahn about this comment.

51.     On at least 3-4 occasions in the fall of 2022, Foster also complained to Ferringhahn about Danny's daily age discriminatory comments and his physical threats.

52.     Ferringerhahn again said he said she would look into it.

53.     Human Resources still did nothing.

54.     Rather, Wilson repeatedly retaliated against Mr. Foster because of his complaints about his harassing conduct.

55.     Wilson started his pattern of daily retaliation by monitoring Mr. Foster's work in an increasingly hostile way, regularly screaming at Mr. Foster about his performance of tasks.

56.     Once, Wilson followed Mr. Foster to the break room to watch Mr. Foster while he would eat his lunch.

57.     On almost a dozen occasions, Wilson followed Mr. Foster to the bathroom.  Other times when Mr. Foster went to the bathroom and then returned to his hi-lo forklift, Wilson would be standing on his hi-lo, waiting for Mr. Foster's return.

58.     Wilson searched Mr. Foster's hi-lo on a dozen occasions, and he often accused Mr. Foster of stealing.

59.     On one occasion, Wilson even accused Mr. Foster of stealing a sponge.

60.     These accusations were false.

**Human Resources Fails to Remedy the Situation, and Contributes to the Retaliation**

61.     Defendant also treated Mr. Foster in a disparate manner, as a means of escalating the harassment and the hostility of the work environment.

62.     In late fall, 2022, Mr. Foster and Danny engaged in a verbal altercation.

63.     Danny found Mr. Foster in an aisle, and Foster told him to move away so that he could continue his work.  Danny again called Mr. Foster an  "old piece of shit, N."  Danny told Mr. Foster that he would go and speak to Saguilan, and "get you fired."

64.     Defendant suspended Mr. Foster for approximately eight days without pay, placing him on "final notice for termination."

65.     By contrast, defendant only suspended Danny for a day.

66.     When Mr. Foster questioned the disparate treatment and attempted to explain what had occurred, Ms. Sharon Tuszak ("Tuszak"), the Director of Human Resources, refused to address it.

67.     UNFI took this action, despite the fact that Mr. Foster had informed Human Resources about Danny's discriminatory and threatening statements.

68.     Nevertheless, UNFI meted out a differential and disproportionately harsh suspension to Mr. Foster as compared to Danny's dramatically lighter punishment.  Especially given that Danny had verbally threatened Mr. Foster with violence.

69.     UNFI also took this action despite the fact that months earlier, Mr. Foster had informed Ferringerhahn about Danny's daily harassment – and UNFI had done nothing to stop Danny's verbal and escalating aggression.

70.     In fact, soon after UNFI imposed the discriminatory and retaliatory discipline of Mr. Foster, Danny confirmed his own violent nature:  Danny again became extremely aggressive and threatening when he acted erratically at work, refused to take a drug test, became violent, and the police had to be called to escort him off the premises.

71.     Despite Danny's violent behavior now being clear to everyone, no one acknowledged that he had instigated and threatened violence with Mr. Foster and created an aggressive situation just two weeks earlier.  Human Resources neither addressed nor remedied the dramatically longer – and discriminatory and retaliatory – eight day suspension of Mr. Foster.

72.     On approximately the overnight of February 8-9, 2023, in front of numerous other employees, Wilson escalated his threatening behavior and stood directly in front of Mr. Foster on the hi-lo that he was operating, put his face near Mr. Foster's face, screaming that Mr. Foster was a "fucking asshole" and an "old bitch."

73.     Wilson was so aggressive and close, screaming, spitting, and so red in the face, that Mr. Foster expected Wilson to punch him in the face.  Again, this was part and parcel of the age discrimination and aggression towards Mr. Foster because of his age, and extremely aggressive retaliation against him for having repeatedly complained about Wilson and the harassment.

74.     When Mr. Foster calmly asked how Wilson could justify his unhinged aggression and screaming, Wilson told Mr. Foster, "I don't give a fuck what you say, or what you do.  Go to HR and tell your lies."

75.     The reference to going to HR and Mr. Foster's past complaints and alleged "lies" demonstrated Wilson's retaliatory animus in his treatment of Mr. Foster.

76.     At the end of the shift, Wilson told Tuszak that Mr. Foster had to go and see Tuszak after he clocked out.

77.     Mr. Foster then went into Tuszak's office to meet with her immediately after his shift on the morning of February 9.  When Foster entered her office, Tuszak told him to shut up and sit down.

78.     But instead of addressing Wilson's behavior, Tuszak raised her voice, berating and accusing Mr. Foster of being aggressive and in some way contributing to the harassment.

79.     Tuszak did not deny that Wilson had screamed at Mr. Foster on the forklift, and that he was derogatory about Mr. Foster's age and angry about Mr. Foster's multiple complaints to Human Resources.

80.     Tuszak only informed Mr. Foster that Wilson had admitted that he "was wrong."

81.     In fact, Tuszak and the company's reaction became even worse when it adopted Wilson's discriminatory statements.  Tuszak told Mr. Foster that he was "wrong" about the incident on the forklift.  As the highest local level representative of the company's Human Resources compliance area, Tuszak also accused Mr. Foster of not working as hard as other employees and that he couldn't work as hard because he was indeed "old."

82.     Tuszak further complained, telling Mr. Foster that she did not know why he had gotten hired at UNFI since "you're too old" to be here.

83.     After announcing such a discriminatory view, Tuszak then proposed to try and resolve the issue between Wilson and Mr. Foster.

84.     Clearly, at that point the Human Resources department was neither unbiased, nor qualified to fairly evaluate age discrimination in UNFI's workplace.

85.     Tuszak's statements and action were discriminatory and unsupportable.  Mr. Foster had not been aggressive nor "contributing" to Wilson's harassment.  It was simply untrue that Mr. Foster was not working hard while attempting to perform his job in a safe way.

86.     While standing close to Mr. Foster, Tuszak explained that Wilson was a very good guy, and that everything that he did should be acceptable.  She also then angrily accused Mr. Foster of allegedly threatening Wilson and telling Wilson that he was going to bring his boxing gloves into work.

87.     This accusation was false.  Mr. Foster told Tuszak that it had been Wilson's friend Danny LNU who had threatened to bring in boxing gloves to use in a fight with Mr. Foster.

88.     Tuszak continued to raise her voice, repeating that no, he was wrong and she had checked with Wilson, and that Mr. Foster had threatened Wilson with the boxing gloves.

89.     At that point, after being shouted at for a few minutes, Mr. Foster told Tuszak that he was leaving.  But Tuszak blew up and was enraged, threatening and yelling that she had not yet given Mr. Foster permission to do so.  Mr. Foster explained that he did not need her permission, since he had already clocked out from work, and Tuszak was acting in a loud and threatening manner.

90.     There was no real action nor remedial action taken in the weeks after this latest meeting with Human Resources.

91.     Given the hostile response by Human Resources, Mr. Foster retained counsel who had initiated contact with the defendant on his behalf.  During this period, counsel repeatedly

attempted to schedule an interview of Mr. Foster by Human Resources and/or to be present if feasible.

92.     Several weeks later, Tuszak saw Mr. Foster outside of work in the parking lot after he had finished his shift.  Tuszak asked Mr. Foster if would come in and speak with her about the investigation.

93.     Mr. Foster thought that his attorney was arranging a scheduled meeting with him and the defendant to discuss the harassment and was unsure about speaking with Tuszak given his last interaction.

94.     Mr. Foster told Tuszak that he would not speak to her at that time and needed to speak with his attorney to find out whether he should attend such a meeting without counsel.

95.     Mr. Foster then asked that if he were to attend a meeting now, could he could record it on his phone? Tuszak told Mr. Foster that there was a company policy against recording any meeting.

96.     Mr. Foster told Tuszak that he wouldn't come inside and meet with her, given that condition.

97.     Tuszak again became angry and raised her voice.  Tuszak announced, "I am done with you. You have not been cooperative.  You have wasted my time.  I'm going to close this investigation without you."

98.     She then told him that she was done "talking to you about your issues."

99.     Human Resources and Tuszak failed to remediate promptly and fully the hostile environment on the basis of age and the retaliatory harassment by Wilson.  Human Resources and Tuszak failed to provide a reasonable, neutral, and unbiased avenue in which to convey and discuss his complaints of harassment, including accounting for his attorneys' role in the process.

100. Rather, Human Resources and Tuszak engaged in intimidating, hostile, and biased acts, never reasonably calculated to provide an unbiased avenue for addressing and investigating Mr. Foster's complaints.

### Human Resources Completes the Retaliation, and Unlawfully Fires Mr. Foster

101. In approximately late February or March 2023, Wilson did move to a day shift, and Mr. Foster stopped working directly with him.

102. A few months later UNFI completed its retaliatory conduct when it fired Mr. Foster on May 4, 2023.

103. In approximately the last week of April 2023, Mr. Foster had two threatening interactions with a co-worker Brian Kelly ("Kelly"), a co-worker and friend of Wilson.

104. On one occasion, Kelly cursed at Mr. Foster. The next day, Kelly threatened Mr. Foster to a physical fight, and then disclosed his real goal: "I am *going to get you fired*."

105. Indeed, Kelly got what he wanted.

106. A few days later, UNFI called Mr. Foster into a video conference meeting with Saguilan and Jody Harkness ("Harkness") from the Loss Prevention department. Harkness asked Mr. Foster if he had threatened to cut Kelly with a knife.

107. Mr. Foster never threatened Kelly with a knife and Mr. Foster vehemently denied it. Rather, Kelly just made it up.

108. Saguilan replied, "No, don't worry about it…just go back to work."

109. On or about May 4, 2023, Ferringerhahn and Saguilan met with Mr. Foster and told him that he had a pattern of being "confrontational" with other associates. Ferringerhahn said that based on its investigation, UNFI would "part ways" with Mr. Foster.

110.    Mr. Foster protested that if anything, Wilson and several of his friends at UNFI had engaged in a pattern of intentional confrontation with him.

111.    Nevertheless, Ferringerhahn would not discuss it further, and she also refused to give Mr. Foster a copy of the investigation results.

112.    After Mr. Foster left the meeting, Mr. Foster told Saguilan that Saguilan knew that Mr. Foster had never threatened Kelly.  Saguilan did not disagree, but demurred that he could not "get involved", and that it was not his decision.  Saguilan explained that the decision "came from HR."

113.    Obviously, Saguilan and HR knew that the story about Mr. Foster's alleged threat to cut Kelly was a lie.

114.    When Mr. Foster had spoken to other supervisors, including Saguilan, they had agreed that Kelly was unbalanced or that Mr. Foster should not worry about it and just "go back to work."

115.    Defendant UNFI's Human Resources department and its managers knew that Kelly's accusations were not supported and were unbelievable. Following many months of harassment, retaliation, and discriminatory conduct, UNFI was looking for an excuse to fire Mr. Foster in retaliation against him for his complaints about a hostile environment.

116.    Defendant's reasons about Kelly's accusations were a pretext for its termination decision.  UNFI seized on the knowingly ridiculous accusations from Wilson's friend as an excuse to get rid of Mr. Foster.

117.    The completely false accusation was a pretext for the defendant's unlawful discriminatory and retaliatory conduct in terminating Mr. Foster's employment.

118.    Mr. Foster lost backpay after the unlawful and pretextual termination of his employment.

119.    Due to the pattern of harassment, age discrimination, and retaliation – including Wilson's physical threats and HR's hostility – Mr. Foster suffered serious emotional harm. Further, during defendant's repeated unjustified discipline of Mr. Foster, and after the termination of his employment, Mr. Foster suffered significant emotional harm.

120.    Mr. Foster experienced serious emotional harm and significant fear on a day-to-day basis because of the escalating confrontations and threat of physical harm.  He also endured a pattern of harassment from defendant's Human Resources department.

121.    While experiencing continued harassment at work for many months and after his discharge, Mr. Foster experienced a significant adverse impact on his sleep, severe and constant anxiety, and a loss of appetite.  Mr. Foster suffered from panic attacks and shortness of breath – so great that he feared that he might have a heart attack.

122.    Even since the end of his employment at UNFI, Mr. Foster has continued to experience these symptoms.

## FIRST CAUSE OF ACTION

### (Hostile Environment on the Basis of Age: Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.*)

123.    Plaintiff repeats and realleges paragraphs 1 through 122 of this Complaint as if set forth herein.

124.    Defendant violated the ADEA.  Mr. Foster is in the protected group over 40, and the defendant created a hostile environment based on Mr. Foster's age.  Over the course of many months, Wilson and other employees engaged in a pattern of harassment on the basis of Mr. Foster's age.

125.    The continuing acts of harassment and the age-based comments by defendant through discriminatory statements by its managers and employees were severe and pervasive.

126.    The harassment was unwelcome by Foster.

127.    Wilson and Tuszak are supervisors who had supervisory control over Mr. Foster and other associates.  UNFI is liable for the harassing acts of its supervisors.

128.    UNFI did not address Mr. Foster's multiple complaints about the age-based statements by several managers and employees, its discriminatory acts, and the creation of a hostile environment. Further, UFNI tolerated and permitted the creation of a hostile environment on the basis of Mr. Foster's age.

129.    Instead of addressing the discrimination and harassment, UNFI disparaged Mr. Foster's age, and further harassed Mr. Foster on the basis of his age.

130.    UNFI and its Human Resources department did not offer a reasonable, neutral and unbiased avenue for addressing, investigating, and remedying Mr. Foster's complaints of harassment.  It failed to remediate promptly and fully the hostile environment on the basis of age.  Instead, UNFI repeatedly intimidated and threatened Mr. Foster.

131.    UNFI failed to take full and effective remedial action to address Mr. Foster's complaints and redress and stop the harassment.

132.    Defendant acted willfully in violating the law, and plaintiff claims liquidated damages for the violations of the Age Discrimination in Employment Act of 1967, 29 U.SC. §621 *et. seq*.

**SECOND CAUSE OF ACTION**

**(Hostile Environment on the Basis of Age: Human Rights Law, Executive Law §296 (1)(a)**

133.     Plaintiff repeats and realleges paragraphs 1 through 132 of this Complaint as if set forth herein.

134.     Defendant violated the New York Human Rights Law, Executive Law §296 (1)(a).

135.     Mr. Foster is in the protected group over 40, and defendant created a hostile environment based on Mr. Foster's age.    Over the course of many months, Wilson and other employees engaged in a pattern of harassment on the basis of Mr. Foster's age.

136.     The continuing acts of harassment and the age-based comments by defendant through discriminatory statements by its managers and employees were severe and pervasive.

137.     The harassment was unwelcome by Foster.

138.     Wilson and Tuszak are supervisors who had supervisory control over Mr. Foster and other associates.  UNFI is liable for the harassing acts of its supervisor.

139.     UNFI did not address Mr. Foster's multiple complaints about the age-based statements by several managers and employees, its discriminatory acts, and the creation of a hostile environment. Further, UFNI tolerated and permitted the creation of a hostile environment on the basis of Mr. Foster's age.

140.     Instead of addressing the discrimination and harassment, UNFI disparaged Mr. Foster's age, and further harassed Mr. Foster on the basis of his age.

141.     UNFI and its Human Resources department did not offer a reasonable, neutral and unbiased avenue for addressing, investigating, and remedying Mr. Foster's complaints of

harassment.  It failed to remediate promptly and fully the hostile environment on the basis of age.  Instead, UNFI repeatedly intimidated and threatened Mr. Foster.

142.    UNFI failed to take full and effective remedial action to address Mr. Foster's complaints and redress and stop the harassment.

143.    Defendant's acts had a severely adverse effect on the terms and conditions of Mr. Foster's employment.

144.    Plaintiff suffered severe emotional harm, upset, and humiliation as the result of defendant creating a hostile environment based on Mr. Foster's age.

145.    Defendant acted with malice and reckless disregard for the law, and it is liable for punitive damages.

## THIRD CAUSE OF ACTION

### (Retaliatory Harassment and Discharge: Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.*)

146.    Plaintiff repeats and realleges paragraphs 1 through 145 of this Complaint as if set forth herein.

147.    In violation of the ADEA, Wilson, UNFI's Human Resources department, and Tuszak engaged in continuing acts of retaliatory harassment.

145.    The retaliatory harassment by the defendant was severe and pervasive.

146.    The harassment was unwelcome by Foster.

147.    Instead of addressing and remedying Mr. Foster's multiple complaints of retaliatory harassment, UNFI responded to Mr. Foster's multiple complaints by intimidating him, and threatening Mr. Foster with bodily harm.

148.    The hostile environment and the retaliatory acts also caused the environment to be unsafe and subjected plaintiff to repeated confrontations and threats of physical harm.

149.    UNFI retaliated against the plaintiff by subjecting him to differential discipline after a violent employee (Danny LNU) engaged Mr. Foster in a verbal altercation.

150.    UNFI and its Human Resources department did not offer a reasonable, neutral, and unbiased avenue for addressing, investigating, and remedying Mr. Foster's complaints of harassment.  It failed to remediate promptly and fully the hostile environment on the basis of retaliatory animus.  Instead, UNFI repeatedly intimidated and threatened Mr. Foster.

151.    UNFI and Human Resources further retaliated against Mr. Foster by firing him on or about May 4, 2022, and through its reliance on its pretextual and false reasons as an alleged justification for terminating Mr. Foster's employment.

152.    UNFI's Human Resources department and its managers knew that Kelly's accusations were not supported and were unbelievable. Following many months of harassment and retaliation, UNFI was looking for an excuse to fire Mr. Foster and it found a pretext. UNFI seized on the knowingly ridiculous accusations from Wilson's friend as an excuse to get rid of Mr. Foster.

153.    Defendant acted willfully in violating the law, and plaintiff claims liquidated damages for the violations of the Age Discrimination in Employment Act of 1967, 29 U.SC. §621 *et. seq*.

**FOURTH CAUSE OF ACTION**

**(Retaliatory Harassment and Discharge: Human Rights Law, Executive Law §296 (1)(a))**

154.    Plaintiff repeats and realleges paragraphs 1 through 153 of this Complaint as if set forth herein.

155.    In violation of the New York Human Rights Law, Executive Law §296 (1)(a) Wilson, UNFI's Human Resources department, and Tuszak engaged in continuing acts of retaliatory harassment.

156.    The retaliatory harassment by the defendant was severe and pervasive.

157.    The harassment was unwelcome by Foster.

158.    Instead of addressing and remedying Mr. Foster's multiple complaints of retaliatory harassment, UNFI responded to Mr. Foster's multiple complaints by intimidating him, and threatening Mr. Foster with bodily harm.

159.    The hostile environment and the retaliatory acts also caused the environment to be unsafe and subjected plaintiff to repeated confrontations and threats of physical harm.

160.    UNFI retaliated against the plaintiff by subjecting him to differential discipline after a violent employee (Danny LNU) engaged Mr. Foster in a verbal altercation.

161.    UNFI and its Human Resources department did not offer a reasonable, neutral and unbiased avenue for addressing, investigating, and remedying Mr. Foster's complaints of harassment.  It failed to remediate promptly and fully the hostile environment on the basis of retaliatory animus.  Instead, UNFI repeatedly intimidated and threatened Mr. Foster.

162.    UNFI and Human Resources further retaliated against Mr. Foster by firing him on or about May 4, 2022, and through its reliance on its pretextual and false reasons as an alleged justification for its termination decision.

163.    UNFI's Human Resources department and its managers knew that Kelly's accusations were not supported and were unbelievable. Following many months of harassment and retaliation, UNFI was looking for an excuse to fire Mr. Foster and it found a

pretext.  UNFI seized on the knowingly ridiculous accusations from Wilson's friend as an excuse to get rid of Mr. Foster.

164.     Plaintiff suffered severe emotional harm, upset, and humiliation as the result of defendant's retaliatory acts and its termination of plaintiff's employment.

165.     Defendant acted with malice and reckless disregard for the law, and it is liable for punitive damages.

## FIFTH CAUSE OF ACTION

### (Discriminatory Treatment and Discharge on the Basis of Age: Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.*)

166.     Plaintiff repeats and realleges paragraphs 1 through 165 of this Complaint as if set forth herein.

167.     Defendant violated the ADEA.  Mr. Foster is in the protected age group over 40.

168.     UNFI discriminated against plaintiff by subjecting him to differential discipline after a violent employee (Danny LNU) engaged Mr. Foster in a verbal altercation.

169.     UNFI and Human Resources further discriminated against Mr. Foster by firing him on or about May 4, 2022, on the basis of his status in a protected age group, and through its reliance on its pretextual and false reasons as an alleged justification for its termination decision.

170.     UNFI's Human Resources department and its managers knew that Kelly's accusations were not supported and were unbelievable. Following many months of harassment and age-based animus against Mr. Foster, UNFI was looking for an excuse to fire Mr. Foster and it found a pretext.  UNFI seized on the knowingly ridiculous accusations from Wilson's friend as an excuse to get rid of Mr. Foster.

171.     Defendant acted willfully in violating the law, and plaintiff claims liquidated

damages for the violations of the Age Discrimination in Employment Act of 1967, 29 U.SC. §621 *et. seq*.

## SIXTH CAUSE OF ACTION

### (Discriminatory Treatment and Discharge on the Basis of Age: Human Rights Law, Executive Law §296 (1)(a))

172.    Plaintiff repeats and realleges paragraphs 1 through 171 of this Complaint as if set forth herein.

173.    Defendant violated the New York Human Rights Law, Executive Law §296 (1)(a) Mr. Foster is in the protected group over 40.

174.    UNFI discriminated against the plaintiff by subjecting him to differential discipline after a violent employee (Danny LNU) engaged Mr. Foster in a verbal altercation.

175.    UNFI and Human Resources further discriminated against Mr. Foster by firing him on or about May 4, 2022, on the basis of his status in a protected age group, and through its reliance on its pretextual and false reasons as an alleged justification for its termination decision.

176.    UNFI's Human Resources department and its managers knew that Kelly's accusations were not supported and were unbelievable. Following many months of harassment and age-based animus against Mr. Foster, UNFI was looking for an excuse to fire Mr. Foster and it found a pretext.  UNFI seized on the knowingly ridiculous accusations from Wilson's friend as an excuse to get rid of Mr. Foster.

177.    Plaintiff suffered severe emotional harm, upset, and humiliation as the result of defendant's retaliatory acts and its termination of plaintiff's employment.

178.    Defendant acted with malice and reckless disregard for the law, and it is liable for punitive damages.

**WHEREFORE**, Plaintiff William Foster demands judgment against Defendant as follows:

on the First, Third, and Fifth Causes of Action, an award of statutory damages, including lost backpay, attorneys' fees, costs and disbursements incurred in connection with this action, and injunctive relief, and liquidated damages for the violations of the ADEA;

on the Second, Fourth, and Sixth  Causes of Action, an award of statutory damages, including lost backpay, attorneys' fees, costs and disbursements incurred in connection with this action, and injunctive relief, as well as compensatory damages for physical and emotional harm and punitive damages for the violations of the Human Rights Law.

Dated: Stamford, Connecticut
         January 11, 2023

ATTORNEY FOR PLAINTIFF
WILLIAM FOSTER

By: */s/ Lewis Chimes (LM2409)*
     Lewis H. Chimes (LM2409)
     Law Office of Lewis Chimes LLC
     45 Franklin Street
     Stamford, CT 06901
     T: (203) 324-7744
     F: (203) 969-1319
     lchimes@chimeslaw.com

By: */s/ Michael Ranis, Esq*
     Michael Ranis, Esq. (MBR #3757)